## PORTER et al. v. JAMES et al.

### (Circuit Court of Appeals, Fifth Circuit. February 25, 1895.)

### No. 251.

ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—FRAUD.

Where an assignment purports to convey all the debtor's property to be equally distributed among all his creditors, and the same is accepted by the assignee and by a majority in number, if not in amount, of all the creditors, it cannot be held fraudulent on its face, although it contains provisions which might be objectionable if the assignment were one granting preferences; nor can such assignment be set aside because of the fraudulent intent of the assignor, not shown to have been participated in by the assignee and the accepting creditors.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

This was a suit by D. T. Porter and G. W. Macrae, partners under the firm name of Porter & Macrae, against I. L. James and J. E. Penney, to cancel an assignment for benefit of creditors, and procure the application of certain moneys to a judgment obtained by complainants against defendants. The circuit court entered a decree dismissing the cause, and complainants appealed.

I. L. James was doing a mercantile business at Hillsboro, Ala., and Porter & Macrae, of Memphis, Tenn., were his commission merchants. As such they furnished him money and goods; and on the 1st of December, 1891, he owed them something over $8,000. At this juncture, W. J. Booker, agent for Porter & Macrae, visited James, to get a settlement or security for the debt. James proposed to sell certain property to Booker in payment of the debt, but, his authority being limited, he asked time to go to Memphis, and lay the matter before his firm, and answer, and was to telegraph to James on the 2d of December, and return and close the matter if acceptable to the firm. While Booker was on this mission, on the said 2d of December, 1891, and after he had sent the telegram, James made an assignment purporting to convey all of his property; at least, pretended to assign it all. J. E. Penney was named as assignee, and on Booker's return he learned of what had happened. Attachment was afterwards sued out and levied on all the property, and the personalty was sold under attachment, and the realty was being advertised by the assignee when this bill was filed. The appellants claim that the assignment is void upon its face, because its provisions impress it as fraudulent in law; also, that it was fraudulent in fact, as shown by the facts proven at the trial. The facts relied upon to support the latter contention were, among others, that while the assignment purported to convey all the property and assets of the assignor, particularly set out and described in the schedule annexed thereto, yet, in fact, it did not convey all of the debtor's property, and that various items of real estate, personal property, and credits were not included therein, and that this property constituted so large a proportion of his assets as to preclude any assumption that the omission was unintentional; that, after the attachment was served, the assignor, with the consent of the assignee, took from the property, presumably in the possession of the assignee, $1,000 worth of property, the same not having been theretofore selected and set apart from the other property as exempt, contrary to the law of Alabama; that the assignee is peremptorily directed in the deed to pay the creditors the amounts stated in the schedule, while the proofs show that $692.60 of this amount was fictitious and not due, for which reason this direction would operate to divert this much property from the creditors; that over $3,000 of creditors was wholly omitted from the schedule; and that the claims of creditors who were named were cut down to the extent of nearly $2,500 less than was actually due them. It was further contended that the proofs showed that

the assignor prepared for an assignment for some time before making the same, and intended to do so at no distant day, and that his proposition to sell a portion of his property to pay the complainants' debt was not made in good faith, but to deceive them, until he could make his assignment, and place his property out of their reach.

The provisions of the deed of assignment which were alleged to show that it was fraudulent and void upon its face were: That it directed the assignee, if in his judgment such a course was deemed advisable, to carry on the mercantile business for a reasonable time in the assignee's store, until the stock of goods then in the said store were sold and disposed of. This provision, it was claimed, placed it in the discretion of the assignee to continue the business for an indefinite time, which might be extended for a long period by him for the purpose of continuing his own compensation; further, directed the assignee to pay to certain creditors the sums therein set down, and reserve the overplus to the grantor, notwithstanding that nearly $2,500 was cut out of the amounts due to the creditors named; operated as a reservation by the debtor of some control over the property conveyed, whereby the deed was prevented from being such an absolute and unconditional assignment as the law required. Also, that the deed expressly provided that no part of the real estate, which constituted the most valuable part of the property assigned, should be sold or disposed of until after all the personal assets had been exhausted, which provision it was claimed would require the prosecution of suits upon notes and accounts to judgment and collection, or return of nulla bona; thus leading to indefinite delay, amounting to a hindrance and delay of the sale of the real estate, such as would make the instrument fraudulent and void.

The deed of assignment was as follows:

"The State of Alabama, Lawrence County. This indenture, made the second day of December, 1891, between I. L. James, of Hillsboro, Ala., of the first part, and J. E. Penney, of Hillsboro, Ala., of the second part, witnesseth: That whereas, the said party of the first part is indebted to divers persons in divers sums of money, which, by reason of sundry losses and misfortunes, he has become unable fully to pay, and is desirous to provide for the payment thereof as far as possible by an assignment of all his property and effects: Now, in consideration of the premises, and of the sum of one dollar to him in hand paid by the said parties of the second part, the receipt whereof is hereby acknowledged, the said party of the first part hath granted, bargained, sold, assigned, transferred, and set over unto the parties of the second part all and singular the lands, tenements, hereditaments, and appurtenances, goods, chattels, stocks, promissory notes, debts, choses in action, claims, demands, property, and effects of every description belonging to the said party of the first part, or in which he has any right or interest whatever, the same being more fully and particularly enumerated and described in a schedule thereof hereunto annexed, marked 'Schedule A'; to have and to hold the same, and every part and parcel thereof, with the appurtenances, unto the parties of the second part, in trust, nevertheless, and to and for the uses, interests, and purposes following, that is to say: First. To take possession of the said property hereby assigned, both real and personal, and to sell and dispose of the personal property herein mentioned with all convenient diligence, either at public or private sale, and to collect all such debts and demands as may be collectible; and if, in their judgment and discretion, he may deem it best and advisable to effectuate the purposes of this trust, to carry on the mercantile business for a reasonable time in my storehouse in the town of Hillsboro until the stock of goods now in my store are sold and disposed of, they are hereby authorized and empowered to do so; and if the personal property and assets herein conveyed shall prove ineffectual to pay all my debts and liabilities hereinafter to be mentioned and provided for, together with the costs of executing this trust, he is authorized and empowered to sell so much of the real estate herein conveyed as will be sufficient to pay said debts and liabilities and expenses of the trust, in full, with the interest thereon that may have accrued, after giving thirty days' notice of the time, place, and terms of sale in some newspaper published in Lawrence county. Secondly. To

pay and discharge all the just and reasonable expenses, costs, and charges of executing this assignment, and of carrying into effect the trust herein created, together with a reasonable commission or compensation to the said party of the second part for his services in executing this said trust, and out of the residue of the proceeds of said sales and collections. Thirdly. To pay and discharge in full, if there be sufficient for that purpose, all the debts and liabilities now due or to become due from the party of the first part, and which are particularly enumerated and described in the schedule thereof hereto annexed, marked 'Schedule B,' together with all the interest due thereon and to grow due thereon; and, if there be not sufficient of said proceeds to pay the said debts and liabilities in full, then to apply the same pro rata, so far as they will extend, to the payment of said debts and liabilities, according to their respective amounts; and if, after paying all the costs, charges, and expenses attending the execution of the said trust and the payment and discharge in full of all the lawful debts owing by the said party of the first part of any and every description, there should be a surplus of the said proceeds remaining in the hands of the said party of the second part, then, lastly, to pay over and return the same to the party of the first part, his executor, administrator, or assigns. And for the better and more effectual execution of these presents, and of the trusts herein created and reposed, the said party of the first part doth hereby make, constitute, and appoint the said parties of the second part his true and lawful attorney, with full power and authority to do, transact, and perform all acts, deeds, matters, and things which may be necessary in the premises and to the full execution of said trust; and, for the purposes of said trust, to ask, demand, recover, and receive of and from all and every person and persons all the property, debts, and demands belonging and owing to the said party of the first part, and to give acquittances and discharges for the same, and to sue, prosecute, and defend and implead for the same, and to execute, acknowledge, and deliver all necessary deeds and instruments of conveyance; and also for the purpose aforesaid, or any part thereof, to appoint one or more attorneys under him, and at their pleasure revoke the same, hereby ratifying and confirming whatever the said parties of the second part or their substitutes shall lawfully do in the premises. And the said parties of the second part do hereby accept the trust created, and in him reposed by these presents, and do for themselves, their heirs, executors, and administrators, hereby covenant and agree to and with the said party of the first part, his executors, administrators, and assigns, that they, the said parties of the second part, will honestly and faithfully, and without necessary delay, execute the same according to the best of their skill, knowledge, and ability. In the event the name of any creditor of the party of the first part having been by mistake omitted, in the Schedule B, such creditor or creditors shall, nevertheless, be entitled to the benefit of this assignment, upon equal terms with the creditors whose names are included in said Schedule B.

"I, D. J. James, wife of I. L. James, for the purpose of relinquishing my dower in all the real estate conveyed to Neely and Penney, assignees in the above deed of trust, and in consideration of the premises, do hereby become a party to this conveyance, jointly with my said husband, and do hereby convey all my interest and rights of dower in and to said property to the said assignees, for the purposes and upon the considerations mentioned and set forth in this the above deed of trust.

"In witness whereof, the parties of the these presents have hereunto set their hands and seals, the day and year above first written.

"I. L. James.    [Seal.]

"D. J. James.    [Seal.]

"J. E. Penney.    [Seal.]

"Witnesses:

   "C. H. Porter.

   "W. F. Berry."

W. V. Sullivan, for appellants.

David D. Shelby, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and TOUL-MIN, District Judge.

PER CURIAM.   As the assignment in question was made by an insolvent debtor, and purports to convey all his property to be distributed equally among all his creditors, and the same has been accepted by the assignee and a majority in number, if not in amount, of all the creditors, the deed of assignment cannot be held to be fraudulent on its face, although the assignment might other-wise be open to objection by reason of some of the provisions con-tained therein, if the assignment were one granting preferences; nor can such assignment be set aside in a court of equity because of the fraudulent intention of the assignor, where it is not shown that the assignee and the accepting creditors participated in the fraud.   The decree appealed from is affirmed.